UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLAINE O.,

           Plaintiff,

        v.                              **DECISION AND ORDER**
                                                               19-CV-6417S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Blaine O.[1] challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that he has been disabled since April 12, 2015, due to various physical and mental conditions.  Plaintiff maintains that he is entitled to disability benefits because his impairments render him unable to work.

        2.        Plaintiff filed an application for supplemental security income on April 12, 2016.  After denial at the agency level, Plaintiff proceeded to a hearing before an ALJ, which took place before ALJ Brian Kane on June 8, 2018.  At the time of the hearing, Plaintiff was 23 years old, with at least a high school education, and past relevant work as a bakery worker, snow shoveler, and electrician's helper.  The ALJ considered the case *de novo* and, on August 17, 2018, issued a written decision denying Plaintiff's applications for benefits.  The Appeals Council thereafter denied Plaintiff's request for review on April 9, 2019.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

3. Plaintiff filed the current action on June 6, 2019, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on February 21, 2020. (Docket Nos. 7, 10, 12, 13.) The Clerk of Court thereafter assigned the case here on February 4, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 15.) For the following reasons, Plaintiff's motion will be granted, Defendant's motion will be denied, and this matter will be remanded to the Commissioner for further proceedings.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 1383 (c)(3).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the

---

[2] The ALJ's August 17, 2018 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6.  As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, CV 19-5075 (GRB), 2021 WL 235630, at *7 (E.D.N.Y. Jan. 25, 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of

4

Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

    9.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

    10.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the

>fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 1383 (c)(1)(A); 20 C.F.R. § 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 12, 2016, the application date (R. at 17);[3] (2) Plaintiff's post-traumatic headaches, post-traumatic stress disorder, and social anxiety disorder are severe impairments within the meaning of the Act (R. at 17); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 18-19); (4) Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the non-

---

[3] Citations to the underlying administrative record are designated as "R."

exertional limitation of only frequent interaction with co-workers and the general public (R. at 19-24); and (5) Plaintiff is capable of performing past relevant work as a bakery worker, snow shoveler, and electrician's helper (R. at 24-25). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from April 12, 2016, through August 17, 2018. (R. at 15, 25.)

13. Plaintiff challenges the ALJ's decision on two fronts. First, he argues that the ALJ's failure to account for his headaches in his RFC determination is not supported by substantial evidence. Second, he contends that the ALJ misapplied the treating-physician rule to the opinion of his primary care physician, Dr. Sudipt Deshmukh. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed. Because this Court finds that remand is necessary for proper consideration of Plaintiff's headache condition, it does not reach Plaintiff's second argument, which the ALJ and the parties are free to revisit on remand.

14. Plaintiff argues that the ALJ erred by failing to properly evaluate his documented headache condition. Specifically, Plaintiff argues that the ALJ failed to account for his headaches *at all* in formulating his RFC, despite finding his headache condition to be a severe impairment at Step 2, and despite his own findings that Plaintiff's headache condition is chronic and causes severe pain (R. at 23). In response, Defendant maintains that the ALJ properly assessed Plaintiff's headaches and reasonably found that they did not require any limitation in his RFC.

15. There is no dispute that Plaintiff has a documented headache condition. The ALJ's own summary of the medical evidence makes that clear. Plaintiff was the

victim of a physical assault that resulted in a right temporal bone fracture and a non-displaced nasal bone fracture. (R. at 20.) Immediately after the assault, Plaintiff began experiencing and reporting headaches to his doctors. See id. In January 2014, Plaintiff reported to Dr. Kevin Walter that he was experiencing déjà vu and headaches. See id. In September 2014, Plaintiff reported headaches to Dr. Anthony Maroldo, who treated him with medications. (R. at 21.) Plaintiff continued to report chronic headaches to his treating physician, Dr. Deshmukh, who prescribed further medications in August 2015. See id. Plaintiff reported an improvement in September 2015, but then was again reporting multiple headaches daily in January 2016, which resulted in additional medications. See id.

16. In May 2016, Plaintiff reported to Dr. Deshmukh that "understanding and exerting" caused him to have increased pain and headaches. (R. at 22.) Dr. Deshmukh referred Plaintiff to a neurologist. See id. Plaintiff continued to report daily, severe headaches in September 2016, which sometimes caused nausea. See id. Dr. Deshmukh again prescribed medication for Plaintiff's headaches. See id. In November 2016, Plaintiff saw neurologist Dr. Seth Zeidman, who noted that Plaintiff was in discomfort throughout the exam. See id. Dr. Zeidman ordered an MRI of Plaintiff's brain, which revealed two punctuate foci of blooming/susceptible artifact involving the right anterior temporal subcorical white matter that reflected a sequelae of a prior trauma or hemorrhagic contusion. See id. In other words, Dr. Zeidman found some objective source for Plaintiff's headaches and diagnosed him with a headache condition. See id. Plaintiff thereafter continued to complain of headaches and continued to be prescribed medication to treat them. See id.

8

17. In addition to the information in Plaintiff's medical records, Plaintiff testified about his headaches at the hearing before the ALJ. As the ALJ summarized:

> At his hearing, the claimant testified that he is unable to work due to frequent severe headaches and difficulties concentrating due to post-traumatic stress disorder. Specifically, the claimant testified that he experiences a strong pressure sensation in his head that causes migraine headache pain, which eventually causes sensitivity to light and nausea. He also testified that these headaches could last a couple of hours to a couple of days at a time. In addition, the claimant testified that the side effects from the medication for his headaches causes him to experience nausea and vomiting as well.

(R. at 20.)

18. The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with a non-exertional limitation to only frequent interaction with co-workers and the general public. (R. at 19.) In reaching this determination, the ALJ considered the medical evidence and Plaintiff's testimony concerning his headaches. (R. at 19-24.) While the ALJ found that Plaintiff's headache condition could reasonably be expected to cause the alleged symptoms, he nonetheless found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the record evidence. (R. at 20.) As to Plaintiff's headache condition, the ALJ ultimately concluded that his headaches were "relatively" and "somewhat" well controlled with conservative treatment methods and therefore did not require any limitation in the RFC. (R. at 23, 24.)

19. Having reviewed the record, this Court finds that the ALJ's consideration of Plaintiff's headache condition requires remand. First, contrary to the ALJ's conclusion, the record does not reflect that Plaintiff's headaches were "relatively well controlled" or

"somewhat well controlled" by medication. (R. at 23, 24.) Instead, the record reflects Plaintiff's continuing complaints of a worsening headache condition, with multiple providers prescribing varying medications, presumably in an effort to *try* to control Plaintiff's condition. No medical provider found that Plaintiff's headache condition was well controlled by medication.

20. Second, the ALJ fails to reconcile his finding that "[t]he record supports that claimant has severe pain caused by a chronic headache condition" with his conclusion that no limitation in the RFC is warranted. Even assuming that substantial evidence supports the ALJ's conclusion that Plaintiff's headache condition is "relatively" or "somewhat" well controlled, it still leaves uncontrolled aspects of the condition that must be assessed and considered in relation to the RFC. No explanation is provided for how the uncontrolled aspects of Plaintiff's headache condition—which the ALJ found was chronic and resulted in severe pain—would not limit his ability to work or warrant a limitation in his RFC. See, e.g., Johnson v. Comm'r of Soc. Sec., No. 2:13-CV-217, 2014 WL 2118444, at *5 (D.Vt. May 21, 2014) ("By finding that Johnson's migraines constituted a severe impairment, the ALJ implicitly found that the impairment 'significantly limit[ed] [Johnson's] . . . ability to do basic work-related activities.'") (quoting 20 C.F.R. § 404.1521 (a)).

21. Third, the ALJ's decision reflects inadequate consideration of the objective evidence of Plaintiff's condition (the MRI results), particularly considering that the ALJ appears to have dismissed some opinion evidence as based on Plaintiff's subjective complaints. (R. at 24.) Further examination of the objective medical evidence supporting Plaintiff's headache condition is thus required for a proper RFC determination.

22.	Accordingly, after carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner for further administrative proceedings consistent with this decision.  Plaintiff's motion for judgment on the pleadings is therefore granted.  Defendant's motion seeking the same relief is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	April 22, 2021
	Buffalo, New York

                                                    s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                 United States District Judge